UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JOHN M. SEMBER,

        Defendant.

Case No. 3:14-cr-141

Judge Thomas M. Rose

___

**ENTRY AND ORDER GRANTING IN PART MOTION IN LIMINE TO PROHIBIT THE USE OF GOVERNMENT EXPERT OR IN THE ALTERNATIVE TO HOLD A *DAUBERT* HEARING (DOC. 85)**
___

This case is before the Court on Defendant John Sember's Motion in Limine to Prohibit the Use of Government Expert or in the Alternative to Hold a *Daubert* Hearing (the "*Daubert* Motion") (Doc. 85). Sember argues that the Government's intended expert, Jeffrey Baldwin, should not be permitted to testify at trial because (1) the Government failed to comply with Federal Rule of Criminal Procedure 16(a)(1)(G), (2) the proposed testimony will not assist the trier of fact, i.e., it is not relevant, (3) the proposed testimony would unfairly prejudice Sember under Federal Rule of Evidence 403, and (4) the proposed testimony is not based on a reliable foundation under *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). On March 4, 2016, the Government filed a Response (Doc. 89) to the *Daubert* Motion. On March 15, 2016, the Court held an evidentiary hearing on the *Daubert* Motion and another pending motion, but neither party elected to introduce evidence relevant to the *Daubert* Motion. This matter is therefore ripe for the Court's review.

## ANALYSIS

### A. The Government's Compliance with Fed. R. Crim. P. 16(a)(1)(G)

Sember argues that the Government has not complied with Fed. R. Crim. P. 16(a)(1)(G) because it failed to disclose both Baldwin's opinions and the bases for his opinions. The

Government contends that it met the requirements of Rule 16(a)(1)(G) by producing Baldwin's Curriculum Vitae ("CV") and a bullet-point "Summary of Expected Testimony of Jeffrey Baldwin." (Doc. 85-1.)

> Rule 16(a)(1)(G) states, in pertinent part:
>
> **Expert witnesses.**--At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. [. . .] The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G). Baldwin's CV describes in great detail his professional background and experience in the field of government security, which has included making determinations as to whether certain classified government materials may be declassified under the applicable rules and regulations. (Doc. 85-1.) The Government's summary of Baldwin's expected testimony lists several topics and propositions, all of which relate to his background and experience in government security. (*Id.*)

Sember argues that none of the topics and propositions in the Government's summary constitute opinions, and therefore the Government has not met its disclosure obligation under Rule 16. The Government correctly notes, however, that an expert need not testify as to opinions, but may assist the trier of fact through testimony regarding facts within his expertise. (Doc. 89 at 4 (citing Fed. R. Evid. 702).) The Court further notes that Sember was provided an opportunity to cross-examine Baldwin regarding his qualifications and any of his expected testimony at the March 15, 2016 hearing, but declined to do so.

The Advisory Committee Notes for Rule 16 state that requiring a summary of expected testimony "is intended to permit more complete pretrial preparation by the requesting party." The CV and Summary produced by the Government have permitted Sember to prepare to address Baldwin's expected testimony at trial. Thus, the Government has met its Rule 16 disclosure obligations as to Baldwin.

2

### B. The Relevance of Baldwin's Testimony

Sember argues that the Baldwin's expected testimony is not relevant to the elements of the crime with which he is charged, theft of Government property under 18 U.S.C. § 641. The elements of theft of Government property are (1) "[t]he thing of value described in the superseding indictment belonged to the United States government," (2) "[t]he defendant stole, purloined, and/or converted such thing of value to the defendant's own use or to the use of another," and (3) "[t]he defendant did so knowing the thing of value was not his, and with intent to deprive the owner of the use or benefit of the thing of value." Fifth Circuit Pattern Criminal Jury Instructions 2.33.[1] In addition, if the jury finds that the stolen item has a value in excess of $1,000, then it constitutes a felony under § 641.

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The Government argues that Baldwin's expected testimony is relevant to the following issues:

- Whether the data and codes that Sember allegedly stole constitutes property of the United States Government;

- The security measures in place at the Center for Rapid Product Development ("CRPD"), which is the Air Force facility where Sember worked and from which he is alleged to have stolen Government Property;

- The nature of the training that Sember received regarding military security policies and practices, which the Government argues is relevant to Sember's "actual knowledge, intent, motive, opportunity, plan, absence of mistake and lack of accident in stealing, purloining, and/or converting sensitive U.S. Air Force owned technical information that had been entrusted to his possession and control;"

- The value of the allegedly stolen Government property.

(Doc. 89 at 5-8.) The Government reasons that the data and codes taken by Sember are tantamount to trade secrets, whose confidentiality must be protected to be proprietary. Baldwin's

---

[1] The Sixth Circuit's pattern jury instructions does not include an instruction for 18 U.S.C. § 641.

3

testimony about the steps taken by the Air Force to maintain the data and code's confidentiality is therefore relevant to establishing that they are Government property. Sember's training in military security policies practices would tend to prove that he was aware of the protected and proprietary nature of the codes and data, and therefore acted with the requisite intent when he allegedly took it without authorization. The Government reasons that testimony about the costs of the security measures employed by the Air Force will support a finding that the data and codes have a value in excess of $1,000.

The Government has established the basic relevance of Baldwin's expected testimony.

### C. **Whether Baldwin's Testimony Would Unduly Prejudice Sember**

Sember argues that Baldwin's expected testimony, even if relevant, would subject Sember to unfair prejudice and confuse the jury and, therefore, should not be permitted under Federal Rule of Evidence 403. The Government disagrees.

Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Sember specifically objects under Rule 403 to the following expected testimony from Baldwin:

- The defendant's copying and/or deletion of said data from his two U.S. Government issued laptop computers and external hard drive onto his personally owned external hard drive violated established DoD/USAF policy

- There are clear and identifiable risks and dangers to national security associated with mishandling "sensitive", "proprietary" "pre-classified" and/or "classified" information"

- These risks include aiding and assisting our nation's adversaries and or costing lives

(Doc. 85 at 5-6.) Sember argues that permitting testimony about whether Sember's alleged actions violated DoD/USAF policy would tend to confuse the jury because they will be charged with deciding if Sember violated 18 U.S.C. § 641, not DoD/USAF policy. Sember argues that

testimony regarding the "risks and dangers to national security" would unfairly prejudice Sember because "there is no evidence that classified information was present, or that disclosure occurred." (*Id.* at 5.) In addition, Sember argues that permitting an "expert" to testify that Sember's alleged actions posed a risk to national security would give undue weight to an unfounded and inflammatory opinion.

The Court finds that testimony regarding whether Sember's actions violated DoD/USAF policy may be admissible to proving that Sember acted with the requisite intent, i.e., "knowing the thing of value was not his, and with intent to deprive the owner of the use or benefit of the thing of value." However, such evidence could easily become cumulative if, for example, the Government also introduces evidence that Sember had a non-disclosure agreement with the Government covering the data and codes at issue, or other evidence showing that Sember was aware of their confidential and proprietary nature. In that case, the probative value of Baldwin's testimony about any violation of DoD/USAF policy diminishes and the potential for confusing the jury becomes a more significant concern. The Court will not bar such testimony at this time, but Sember should raise an objection at trial if such circumstances arise.

The Court agrees that testimony regarding the "risks and dangers to national security" – the second and third bullets above – lacks foundation and would be unduly prejudicial if permitted. There has not been any showing, to date, that any of the data and codes at issue posed a threat to national security or were ever at risk of being disclosed to "our nation's adversaries." As a result, the Government is barred from presenting such testimony from Baldwin at trial.

Baldwin's testimony about "the so-called *Compilation* theory" also creates an issue under Rule 403. The Government describes the *Compilation* theory as "where 2 or more unclassified statements can be merged or connected and thereby become considered classified material." (Doc. 85-1 at PageID # 786.) The Government has stipulated that none of the information at issue in this case is classified. (Doc. 74 (transcript of hearing on CIPA motion).) Thus, informing the jury that unclassified material can be combined to form classified material runs a serious risk of

5

suggesting that this case involves classified material, which it does not. Even suggesting that the materials at issue in this case might become classified at some later date, if they are combined with certain other materials (currently unknown), is speculative and of little probative value. The Government does not have to prove that any of the allegedly stolen data or codes is classified to establish a violation of 18 U.S.C. § 641. The Court therefore bars the Government from presenting testimony from Baldwin about the *Compilation* theory, insofar as it relates to the classified nature of any materials.

### D. Whether Baldwin's Testimony Is Reliable under *Daubert*

Sember also challenges the relevance and reliability of Baldwin's expected testimony under *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). Sember's argument on this issue is directed primarily at the relevance of the expected testimony, which the Court addressed above. As to reliability, Sember recites the applicable standard under *Daubert*, but does not argue precisely why Baldwin is unqualified to testify to the security measures listed in the Government's summary of his expected testimony. Earlier in the memorandum, Sember argues that Baldwin should not be permitted to testify because, by the Government's own admission, "[t]he specific nature of the data contained in these notebooks can be best described by CRPD/Air Force Research Lab officials." (Doc. 85 at 5 (quoting Doc. 85-1).) This admission limits Baldwin's ability to testify as a fact witness, but does not limit his ability to testify as an expert on the security measures used by the Air Force to protect facilities like the CRPD.

Upon review of Baldwin's CV, he has extensive professional training and experience in the field of the government security and the classification of government data. He is qualified to testify as to the topics contained in the Government's summary (Doc. 85-1). The Court offered Sember the opportunity to cross-examine Baldwin as to his credentials at the March 15, 2016 hearing, but Sember declined to do so. As a result, there is nothing in the record causing the Court to doubt Baldwin's qualifications, as set forth in his CV.

## CONCLUSION

Sember's *Daubert* Motion is **GRANTED IN PART** as set forth in Part C of the Analysis section of this Entry and Order.   In all other respects, the *Daubert* Motion is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, March 25, 2016.

                                                                                    s/Thomas M. Rose

                                                                                     _____
                                                                                         THOMAS M. ROSE
                                                                       UNITED STATES DISTRICT JUDGE