**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:14-cr-141 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| JOHN M. SEMBER, | : | |
| Defendant. | : | |

_____

**ENTRY AND ORDER REPRIMANDING THE GOVERNMENT'S COUNSEL
FOR VIOLATIONS OF THE OHIO RULES OF PROFESSIONAL CONDUCT
AND ORDERING THAT THE COURT'S ORDER TO SHOW CAUSE (DOC.
146) AND THE PARTIES' BRIEFING (DOCS. 150, 152) RELATED TO THIS
MATTER BE UNSEALED**
_____

This case is before the Court on its Entry and Order Directing Government's Counsel to Respond to Allegations Regarding Trial Exhibit and Show Cause Why an Order of Contempt Should Not Be Entered (the "Order to Show Cause") (Doc. 146).  After this case went to trial and Defendant John M. Sember was acquitted of theft of government property, Sember's counsel notified the Court that he believed that the Government had introduced a suppressed document into evidence at trial.  (Doc. 146-1.)  The Court ordered the Government to respond to this allegation so that the Court could determine what, if any, action may be required, including whether Government's counsel should be held in contempt or subject to sanctions for professional misconduct.  (Doc. 146.)  The Government submitted a memorandum in response to the Order to Show Cause, in response to which Sember's counsel filed a reply.  (Docs. 150, 152.)  In light of the memoranda submitted by counsel, a hearing is unnecessary and this matter is ripe for review.

For the reasons below, the Court finds that the Government's counsel violated the Court's Order suppressing all evidence seized from a pickup truck parked outside of Sember's residence.

However, as the evidence does not support a finding that the Government's counsel intentionally violated the Court's Order, a finding of criminal contempt is not appropriate. The conduct nonetheless fell below the high standard required of federal prosecutors and violated the Ohio Rules of Professional Conduct, which apply under Southern District Local Rules. The Court therefore enters a formal reprimand of Government's counsel and will require Government's counsel to take additional measures to ensure the admissibility of all evidence offered at trial in all criminal matters before this Court until further notice.

## BACKGROUND

Sember was indicted for knowingly, intentionally and without proper authority stealing certain sensitive and proprietary technical, engineering and computer data and codes belonging to the United States Air Force and having a value in excess of $1,000, in violation of 18 U.S.C. § 641. (Doc. 27.) On March 29, 2016, the Court convened a jury trial and, on April 6, 2016, the jury returned a verdict of not guilty. (Docs. 122, 137.)

Prior to trial, Sember moved to suppress certain evidence seized pursuant to a search warrant from his residence, a shed outside his residence, and a pickup truck parked in his driveway. (Doc. 62.) Although the Government generally opposed the motion to suppress, it represented that it had "no intention of offering into evidence at trial any items seized from either defendant's parked truck or shed." (Doc. 81 at 16.) The Government therefore did not oppose suppression of the evidence seized from those locations, as it viewed the issue as moot. (*Id.*) Nevertheless, the Court found persuasive Sember's argument that such evidence should be suppressed and, in the absence of any opposition, the Court barred the Government from offering into evidence at trial any items seized from outside Sember's residence. (Doc. 97 at 17.)

At trial, the Government introduced into evidence, among other documents, a document

2

titled "Employee Agreement Relating to Confidential Information, Inventions, Copyrights, Other Employment, and Conflict of Interest" with ARINC Incorporated, Aeronautical Radio, Inc., ARINC Engineering Services, LLC or ARINC Managed Services, LLC (the "ARINC NDA") (Doc. 150-4.) The ARINC NDA purports to impose certain obligations on ARINC employees relating to the treatment of confidential information and ownership of intellectual property created during the course of employment. (*Id.*) Sember's signature, dated January 15, 2013, is on the second page of the ARINC NDA. (*Id.* at 2.)

After Sember's acquittal at trial, Sember's counsel, Lawrence J. Greger, notified the Court that he believed that the Government introduced the ARINC NDA into evidence at trial in violation of the Court's Order suppressing all evidence seized from outside of Sember's residence. (Doc. 146-1.) The Government had just returned two items of evidence to Mr. Greger that were seized pursuant to the search warrant at issue on Sember's motion to suppress. (*Id.* at 1.) One of the items was a three-ring binder seized from the pickup truck outside of Sember's residence. (*Id.*) Inside the three-ring binder, Mr. Greger found the original ARINC NDA signed by Sember. (*Id.*)

Mr. Greger deduced that the ARINC NDA in the three-ring binder had been the only version of that document in the Government's possession based on the following facts:

1. The ARINC NDA in the binder is the original document signed by Sember;

2. Sember never provided the original, signed ARINC NDA to his employer, Booz Allen Hamilton Engineering Services, LLC ("BAHES"), because he questioned whether or not he should sign the document;

3. Sember contacted ARINC's legal counsel, who told him that he should not sign the ARINC NDA because he worked for BAHES, not ARINC;[1]

---

[1] In November 2012, Booz Allen Hamilton purchased certain portions of ARINC Engineering Services. (Doc. 150 at 3.) Booz Allen Hamilton created BAHES as a wholly owned subsidiary for the express purpose of operating the

3

4. Sember recalled putting the ARINC NDA into the binder, which he took with him to a meeting with his attorney at the law firm of Rion, Rion and Rion;

5. After returning from the meeting with his attorney, Sember never removed the binder from his pickup truck;

6. Federal agents subsequently seized the binder from his pickup truck; and

7. Sember's certified personnel records (Doc. 150-1), which the Government also introduced into evidence at trial, do not contain a copy of the ARINC NDA.

(*Id.* at 1-2.) Mr. Greger reasons that, if the binder seized from the truck is the only source of the ARINC NDA in the Government's files, then the Government violated the Court's Order on Sember's motion to suppress by introducing it into evidence at trial.

The Government's counsel states that, prior to their investigation in response to the Order to Show Cause, they believed that the ARINC NDA originated from BAHES's personnel file for Sember. (Doc. 150 at 6, 11.) Previously, they were not aware of Mr. Greger's representation that Sember never provided the ARINC NDA to BAHES's human resources department. (*Id.* at 5.) The Government's counsel asserts that they believed in good faith that the ARINC NDA came from the BAHES's personnel file based on the following facts:

1. In his application for employment at BAHES, Sember acknowledged that he would "be required to execute certain agreements with ARINC relating to inventions, conflicts of interest, proprietary information, and Professional Work Environment Certificate of Understanding" (*id.* at 4 (citing Doc. 150-1));

2. When Sember was hired in January 2013, BAHES still followed "ARINC personnel practices, HR practices, procedures, policies forms and documentation" (*id.* at 3);

3. ARINC's personnel practices, policies and procedures "required all prospective ARINC/BAHES employee applicants to submit a signed copy of the ARINC NDA as a condition precedent to being hired" (*id*. at 5); and

---

newly acquired ARINC business. (*Id.*)

> 4. Between November 2012 and March 2013, the BAHES office maintained all individual employee personnel files, which included signed copies of NDAs (*id.* at 6).

Now that the Government's counsel is aware of the representation that Sember never turned in the ARINC NDA to BAHES, they still do not concede that the only copy of it came from the suppressed binder. Instead, the Government's counsel claim that they are "unable to categorically confirm or deny to the Court whether the Dayton ARINC/BAHES officer ever did in fact receive a photo-copy of Defendant's ARINC NDA during his initial in-processing." (Doc. 150 at 7.) The issue of whether the ARINC NDA existed only in the suppressed binder is uncertain, according the Government's counsel, because:

> Subsequent to March 2013, the Dayton ARINC/BAHES office periodically forwarded personnel files of terminated ARINC employees to a contract storage facility located in Oklahoma City, Oklahoma, for long term storage. As a result of this process, an undetermined number of individual ARINC/BAHES personnel file documents were lost or misplaced. It cannot presently be determined whether any part of Defendant's local ARINC/BAHES personnel file may have inadvertently been lost or misplaced as a result of this transfer procedure.

(Doc. 150 at 6.)

The Court is now tasked with determining what action, if any, is appropriate based on the above facts and representations of counsel.

## LEGAL STANDARD

The violation of a court order may result in the entry of a finding of contempt or other sanctions. 18 U.S.C. § 401(3). A finding of contempt can be criminal or civil, *In re Jaques*, 761 F.2d 302, 305 (6th Cir. 1985), and the same conduct may be subject to both criminal and civil contempt sanctions. *United States v. Bayshore Associates, Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991). Federal courts also have "inherent authority to discipline attorneys practicing before them." *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 724 (6th Cir. 1993). "Hence,

5

when confronted with actions that may not fall within the court's contempt power, this inherent power to maintain respect and decorum grants courts the flexibility to equitably tailor punishments that appropriately fit the conduct." *In re Smothers*, 322 F.3d 438, 442 (6th Cir. 2003).

To sustain a finding of criminal contempt, four requirements must be met. *Smothers*, 322 F.3d at 441-42. First, the court's order must be disobeyed or resisted. 18 U.S.C. § 401(3). Second, "the act of disobedience or resistance must be 'a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation.'" *Smothers*, 322 F.3d at 441-42 (quoting *In re Chandler*, 906 F.2d 248, 250 (6th Cir. 1990)). This requirement also may be met where an attorney's conduct "discloses a reckless disregard for his professional duty." *United States v. Delahanty*, 488 F.2d 396, 398 (6th Cir. 1973). Third, the violation "needs to be proved beyond a reasonable doubt." *Smothers*, 322 F.3d at 442 (citing *Vaughn v. City of Flint*, 752 F.2d 1160, 1168 (6th Cir. 1984)). Fourth, unless the court personally "saw or heard the contemptuous conduct," it must follow the procedures set forth in Federal Rule of Criminal Procedure 42, which include notice, the appointment of a prosecutor, and a hearing or trial. Fed. R. Crim. P. 42(b), (a).

The purpose of criminal contempt is punitive, but "the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant." *Bayshore Associates*, 934 F.2d at 1400; *see also In re Jaques*, 761 F.2d at 305–06 (6th Cir. 1985) ("Generally, civil contempt may be either intended to coerce future compliance with a court's order . . . or to compensate for the injuries resulting from the noncompliance."). Civil contempt also differs from criminal contempt "in that failure to comply with a court's order does not need to be willful." *Kelly v. Wengler*, 979 F. Supp. 2d 1104, 1108 (D. Idaho 2013). A civil contempt finding must be supported by clear and convincing evidence that the allegedly offending party

6

violated a "definite and specific" court order. *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 643 (6th Cir. 2015) (citing *Glover v. Johnson*, 75 F.3d 264, 267 (6th Cir. 1996)). "There is no requirement to show intent beyond knowledge of the order." *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015) (citing *In re Jaques*, 761 F.2d at 306)).

"A court may exercise its inherent power to sanction when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' or when the conduct was 'tantamount to bad faith.'" *United States v. Aleo*, 681 F.3d 290, 305 (6th Cir. 2012) (quoting *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)). The Sixth Circuit also noted in *Aleo*, however, that "[i]t may be questionable whether the inherent authority to sanction even exists in a criminal case" because "[a]n argument can be made that Federal Rule of Criminal Procedure 42, covering criminal contempt, is the sole mechanism for punishing bad-faith conduct in criminal cases." *Id.* at 305 n. 13. The Sixth Circuit did not decide this question in *Aleo* because the conduct at issue—whether a defense attorney filed a frivolous motion—did not merit sanctions under the district court's contempt power or inherent authority. *Id.*

In concurrence, Judge Sutton considered this question, however, and concluded that "Congress and the Rules makers meant to give the federal courts just one tool—the contempt power—to discipline attorneys in criminal cases." *Id.* at 309. He first reasoned that, since lower federal courts were created by Acts of Congress, their inherent power to discipline attorney conduct may not be used "to 'circumvent[]' or 'thwart the purposes of the other sanctioning mechanisms' Congress has provided directly by statute or less directly through the Rules Enabling Act." *Id.* at 307 (concurring) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Judge Sutton observed that, in contrast to the many rules and statutes governing attorney conduct in civil cases, there are no rules and statutes "directed solely to attorney misconduct in a criminal

case." *Id.* at 308 (noting "the contempt power authorized by § 401 and Criminal Rule 42 applies to misconduct in criminal *and* civil cases"). The "best inference" from this "void" of rules and statutes, according to Judge Sutton, is that federal courts may use only their contempt power to sanction attorney misconduct in criminal cases. *Id.* at 308-9. Limiting the district courts' sanctioning authority in this way addressed concerns that providing the same broad sanctioning authority available in civil cases might stifle zealous advocacy by criminal defense attorneys and infringe on prosecutorial or sovereign immunity. *Id.* at 308. Judge Sutton finally opined that, if district courts do have inherent authority to sanction attorney misconduct in criminal cases, it should be applied with "restraint and discretion" in only "unique" cases. *Id.* at 312 (quoting, in part, *Chambers*, 501 U.S. at 44).

The conduct of attorneys practicing before this Court is also governed by the Model Federal Rules of Disciplinary Enforcement. *See* 28 C.F.R. Part 77 (implementing 28 U.S.C. § 530B); S.D. Local Rule 83.3(h). Rule IV of the Model Federal Rules of Disciplinary Enforcement provides:

> **Standards for Professional Conduct**
>
> (A) ***For misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this Court may be disbarred, suspended from practice before this Court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.***
>
> (B) Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Rules of Professional Conduct adopted by this Court shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship. ***The Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the highest court of the state in which this Court sits,*** as amended from time to time by that state court, except as otherwise provided by specific Rule of this Court after consideration of comments by representatives or bar associations within the state.

Model Fed. R. Disciplinary Enforcement IV (emphasis added). Thus, under the Southern District

Local Rules, the Court may discipline attorneys for a violation of the Model Federal Rules of Disciplinary Enforcement and the Ohio Rules of Professional Conduct.

The following excerpts from the Ohio Rules of Professional Conduct are relevant to the conduct under consideration:

> **RULE 1.3: DILIGENCE**
>
> A lawyer shall act with reasonable diligence and promptness in representing a client.
>
> **Comment**
>
> [1] A lawyer should pursue a matter on behalf of a client despite opposition, obstruction, or personal inconvenience to the lawyer. A lawyer also must act with commitment and dedication to the interests of the client.
>
> [2] A lawyer must control the lawyer's work load so that each matter can be handled competently.
>
> [3] Delay and neglect are inconsistent with a lawyer's duty of diligence, undermine public confidence, and may prejudice a client's cause. Reasonable diligence and promptness are expected of a lawyer in handling all client matters and will be evaluated in light of all relevant circumstances. The lawyer disciplinary process is particularly concerned with lawyers who consistently fail to carry out obligations to clients or consciously disregard a duty owed to a client.
>
> . . .
>
> **RULE 3.3: CANDOR TOWARD THE TRIBUNAL**
>
> (a) A lawyer shall not *knowingly* do any of the following:
>
> (1) make a false statement of fact or law to a *tribunal* or fail to correct a false statement of material fact or law previously made to the *tribunal* by the lawyer;
>
> . . .
>
> **RULE 3.4: FAIRNESS TO OPPOSING PARTY AND COUNSEL**
>
> A lawyer shall not do any of the following:
>
> . . .
>
> (c) knowingly disobey an obligation under the rules of a tribunal, except for an

open refusal based on a good faith assertion that no valid obligation exists;

. . .

### RULE 3.8:   SPECIAL RESPONSIBILITIES OF A PROSECUTOR

. . .

**Comment**

[1] A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded justice and that guilt is decided upon the basis of sufficient evidence. . . .

### RULE 8.4:   MISCONDUCT

It is professional misconduct for a lawyer to do any of the following:

(a) violate or attempt to violate the Ohio Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

. . .

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

. . .

**Comment**

. . .

[5] Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, agent, and officer, director, or manager of a corporation or other organization.

. . .

While the above excerpts from the Ohio Rules of Professional Conduct are self-explanatory, it bears emphasis that they require more of attorneys who prosecute crimes on behalf of the government.   Such obligations are consistent with the Supreme Court's discussion

10

of the high standard of conduct required of federal prosecutors:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935). The Sixth Circuit has repeatedly held federal prosecutors to this standard of conduct, recognizing that while "it is the duty of the prosecutor to advance the government's cause with force and persuasiveness," the prosecutor "has a concomitant duty not to derogate from a fair and impartial criminal proceeding." *United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991).

## **ANALYSIS**

The first question is whether the evidence establishes that the Government offered the ARINC NDA into evidence at trial in violation of the Court's Order on Sember's motion to suppress. The Court concludes that it does, regardless of whether that fact must be proven beyond a reasonable doubt or by clear and convincing evidence.

The Government suggests that there is a possibility that the copy of the ARINC NDA admitted into evidence at trial originated from Sember's personnel file at BAHES. If such a possibility exists, it is remote. The Government's counsel conducted an exhaustive investigation in response to the Order to Show Cause, but still is unable to conclusively identify any source for the ARINC NDA other than the suppressed binder. Neither BAH nor BAHES have a copy of the ARINC NDA in their files. The Government posits that BAHES once had a copy of the ARINC NDA, but lost it at some point after it produced its relevant files for purposes of this case. If that

were true, you would expect the Government's counsel to be able to trace the source of the ARINC NDA in their own case file back to a source at BAHES. But, for reasons undisclosed, the Government's counsel does not claim to be able to do that. Certainly, the copy of the ARINC NDA that the Government presented to the Grand Jury and moved for admission into evidence at trial came from somewhere. If it came from the binder suppressed by the Court, then someone must have removed it from that binder. The Government's counsel's silence as to the origin of the ARINC NDA in their own case file implies either that they do not know its origin or that its origin is inconsistent with their theory that BAHES once had a copy.

In any event, the record establishes beyond a reasonable doubt that the copy of the ARINC NDA admitted into evidence at trial was pulled from the suppressed binder. According to Sember's counsel, after Sember signed the ARINC NDA, he did not turn it in to BAHES because he was concerned that it did not apply to his employment at BAHES—as ARINC ceased to exist after BAH acquired it. Instead, Sember put the original, signed ARINC NDA into a binder and took the binder with him to a meeting with his attorney. After the meeting, Sember left the binder in his truck, where it remained until it was seized by the FBI. Thus, for the Court to accept the Government's theory that the ARINC NDA might have once existed in Sember's personnel file at BAHES, it cannot believe Sember's recollection of events.

Unlike the Government's theory, however, Sember's recollection is corroborated by other facts in the record. On March 25, 2014, Agent Andrew Eilerman of the FBI completed a memorandum regarding his early investigation into Sember's alleged theft of government property. (Doc. 150-17 at PAGEID# 1424-25.) In the memorandum, Eilerman states that BAHES provided him with "documents that Sember likely signed." (*Id.*) Eilerman explains:

> They [BAHES] did not have [Sember's] personnel file maintained locally so they

12

> were unable to retrieve this document but they provided an example of it. It is titled: ARINC (corporate name prior to BAHES) "Employee agreement relating to confidential information, inventions, copyrights, . . .

(*Id.* at PAGEID# 1425.) The Government attached only two pages of this memorandum to their Response, so the complete title of the referenced ARINC document is not available. It is almost certain, however, that the memorandum refers to the ARINC NDA, whose full title is "Employee Agreement Relating to Confidential Information, Inventions, Copyrights, Other Employment, and Conflict of Interest." Thus, as of March 25, 2014, the FBI did not have a copy of Sember's signed ARINC NDA, and BAHES had indicated that its personnel files were maintained off-site.

On March 28, 2014, Eilerman completed another memorandum summarizing his interview of Karen Paulsen, the Facility Security Officer for BAHES. In relevant part, Eilerman's memorandum states:

> Paulsen described Sember as problematic from the beginning. She said that he would not comply with corporate policies regarding annual required training and other administrative matters. ***Paulsen could not specifically recall but believed that Sember refused to sign a document titled: "Employee Agreement Relating to Confidential Information, Inventions, Copyrights, Other Employment, and Conflict of Interest". Paulsen provided a copy of this document, however it was signed by another employee not related to this investigation . . . .*** Paulsen also provided a document titled: "Nondisclosure Agreement for Contractor Employees". This document was signed by John M. Sember and was dated 01/14/2013.

(Doc. 152 at PAGEID# 1602 (emphasis added).) Here, Paulsen is undoubtedly referring to the ARINC NDA, whose title is identical to the title of the document that she believed Sember refused to sign. Paulsen's statement to Eilerman corroborates Sember's recollection that he never turned in the ARINC NDA.

Paulsen's belief that Sember never signed the ARINC NDA—which we know is not correct since the signed ARINC NDA is at issue—does not diminish the corroborative force of her statement. Sember recalls that he never turned in the signed ARINC NDA to BAHES because of

13

concerns about its applicability. Paulsen, however, believed that BAHES did not have a copy of the signed ARINC NDA because Sember was "problematic" and refused to sign it. It is plausible that a Facility Security Officer, like Paulsen, would view a new hire's refusal to agree to a required non-disclosure agreement as "problematic." Whether Sember refused to sign the ARINC NDA or merely refused to turn it in would be less significant to Paulsen—and therefore more likely to be incorrectly recalled—than the fact that BAHES did not have a signed document from the new hire. The key fact for purposes of the Court's inquiry is whether or not BAHES ever had a copy of the ARINC NDA. Paulsen's statement to Eilerman supports a finding that it did not.

On August 27, 2015, BAH produced copies of Sember's employment records to the Government's counsel. (Doc. 150 at 7.) BAH confirmed that the documents produced included all known BAH/BAHES and ARINC personnel records for Sember. (*Id.*) According to Government's counsel, "[a] subsequent review[2] of this BAH document package revealed that it did not include copies of the Defendant's BAH NDA, ARINC NDA or USAF NDA." (*Id.*) This fact also corroborates Sember's recollection that he never turned in the ARINC NDA.

Not only is the ARINC NDA absent from BAH's files, but there is no affirmative evidence that it came from anywhere other than the suppressed binder. In contrast, the BAH also did not have a copy of Sember's BAH NDA, but there is affirmative evidence of an alternative source for it—specifically, Eilerman's interview memorandum states that Paulsen had a copy of the BAH NDA. (Doc. 152 at PAGEID# 1602.) Similarly, BAH's files did not contain the USAF NDA, but it was found in the Government's JPAS database. (Doc. 150 at 5.) The ARINC NDA is the only document among the three NDAs absent from BAH's files that cannot be traced to another

---

[2] The Government's counsel does not indicate when it performed this "subsequent review," but it may be deduced that it occurred after May 13, 2016. Government's counsel states that the subsequent review revealed that the BAH documents did not contain the BAH NDA, ARINC NDA, or USAF NDA, but Government's counsel was not aware of the USAF NDA until May 13, 2016. (Doc. 150 at 5.)

source.

Further corroborating Sember's recollection, there is no evidence that the Government's counsel had a copy of Sember's signed ARINC NDA until after the FBI seized it from his truck. The FBI executed the search warrant for Sember's residence and removed the binder from his truck on March 28, 2014.  (Doc. 150 at 10.)  The Government first used a copy of the ARINC NDA as a Grand Jury exhibit on September 23, 2014, long after the ARINC NDA was seized. (*Id.* at 8.)  The Court is not aware of any evidence showing the Government possessed Sember's signed ARINC NDA before March 28, 2014.

Based on the above facts, the Court finds that the only ARINC NDA in the Government's possession was the original, signed ARINC NDA seized from Sember's truck.  The Court suppressed that document along with all of the other evidence seized from Sember's truck in its Order on Sember's motion to suppress.  (Doc. 97 at 16-17.)  Thus, the Government's counsel introduced the ARINC NDA into evidence at trial in violation of the Court's Order.

The next question is whether the Government's counsel violated the Court's Order deliberately or intentionally.  An argument can be made that the violation must have been intentional because a careful prosecutor should know the source of the evidence that will be used at trial and, in this particular case, the origin of the ARINC NDA was called into question on more than one occasion.  Generally, prosecutors preparing for trial should be able to establish a foundation for every item of evidence that they intend to introduce—in the event that defense counsel raises an objection to their admission.  If the Government's counsel were so prepared in this case, then they would have known that the ARINC NDA was not admissible under the Court's Order.  The Government's counsel also should have been alerted to the uncertainty regarding the ARINC NDA's origin from the FBI memoranda stating that BAHES did not have a copy of

15

Sember's signed ARINC NDA.  The Government's counsel had those memoranda, dated March 2014, long before they first represented to the Court in March 2015 that they had no intention of using any of the items seized from Sember's truck.  In August 2015, the Government received BAH's certified personnel records for Sember, which did not contain a copy of the ARINC NDA.  Those records also should have put Government's counsel on notice of the issue before they again represented to the Court, in February 2016, that they had no intention of using any of the items seized from Sember's truck.

Other facts, however, suggest that the Government's counsel was only negligent in their violation of the Court's Order.  The ARINC NDA was one of several documents that new hires were expected to sign during the period when Sember joined BAHES.  In the ordinary course, Sember would have signed the ARINC NDA, provided it to BAHES, and BAHES would have maintained it in Sember's personnel file.  The Government's counsel admit that they "honestly, and albeit probably incorrectly, always assumed that the source of the photo-copied versions of both Defendant's ARINC NDA <u>and</u> BAH NDA originated from Defendant's local ARINC/BAHES personnel file."  (Doc. 150 at 11.)  In addition, Sember's counsel never objected to the admission of the ARINC NDA into evidence.  Had Government's counsel been required to establish a foundation for the ARINC NDA, they would have discovered that they were mistaken in their belief that the ARINC NDA came from BAHES.[3]

In the balance, there is insufficient evidence to find, beyond a reasonable doubt, that the Government's counsel intentionally violated the Court's Order.  This conclusion does not excuse

---

[3] Certainly no blame should be placed on Sember's counsel for not objecting to admission of the ARINC NDA. Sember's counsel relied on the Court's Order suppressing all evidence seized from Sember's truck.  At no time did the Government's counsel seek reconsideration of the Court's Order.  Moreover, Sember's counsel did not discover until after the conclusion of the case that the only ARINC NDA in the Government's possession was the one seized from Sember's truck.  Sember's counsel asked to review the FBI's case file prior to trial, but the request was denied due to concerns that classified information might be accessible in a new FBI database.  (Doc. 150 at 12.)

the conduct of Government's counsel, however, as the evidence is clear and convincing that, with respect to this evidentiary issue, they failed to meet their duty "not to derogate from a fair and impartial criminal proceeding." *Solivan*, 937 F.2d at 1150. They were both careless in their management of the evidentiary file and made assumptions about the source of the ARINC NDA that they never took the time to confirm, despite circumstances that should have cast doubt on those assumptions. Had the jury returned a guilty verdict in this case instead of an acquittal, their negligence would have come at much greater cost—regardless of the outcome of any appeal.

The final question is what action should be taken to address the negligent violation of the Court's Order by Government's counsel. A finding of criminal contempt is precluded because the Court is unable to find that the violation was intentional. Nor would a finding of civil contempt be appropriate because there is no longer any need to compel compliance with the Court's Order and there is no injury to be compensated. This case also does not involve the kind of special circumstances that might justify resorting to the Court's inherent authority to sanction attorney misconduct, especially in light of Judge Sutton's admonitions regarding district courts' inherent authority to discipline counsel in criminal cases. *Aleo*, 681 F.3d at 308-9. Instead, the violation is best addressed in the context of the Court's authority under the Southern District Local Rules to discipline attorneys for violations of the Ohio Rules of Professional Conduct.

The Ohio Rules of Professional Conduct that prohibit acts committed knowingly, e.g. Rules 3.3 and 3.4, are not at issue here. Instead, violation of the Court's Order implicates the obligations set forth in Rule 1.3 on Diligence and Rule 8.4 on Misconduct. Furthermore, when applying these Rules, the Court must take into account the high standard of conduct required of federal prosecutors and their concomitant duty as representatives of the United States to ensure that every defendant receives a fair trial.

Rule 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client." A reasonably diligent lawyer would not represent to the Court that it has no intention of using evidence seized from a certain source at trial without, at the very least, reviewing the evidence that he or she intends to use at trial and confirming that it does not come from that source. Here, the Government's counsel failed to do so. Of course, a reasonably diligent lawyer also would not offer into evidence a document that the Court has suppressed—which the Government's counsel also did due to the same lack of diligence. The Court would expect any lawyer practicing before it to meet this reasonable diligence standard. The fact that the lawyers who failed to meet this standard in this case were prosecuting a criminal matter on behalf of the United States only makes their failure more inexcusable.

Rule 8.4 provides that it is professional misconduct for a lawyer, among other acts, to "engage in conduct that is prejudicial to the administration of justice." Black's Law Dictionary defines justice as:

> **1.** The fair treatment of people. **2.** The quality of being fair and reasonable. **3.** The legal system by which people and their causes are judged; esp., the system used to punish people who have committed crimes. **4.** The fair and proper administration of laws.

BLACK'S LAW DICTIONARY 995 (10th ed. 2014). Under any of these definitions, the introduction of a suppressed document into evidence at trial is prejudicial to the administration of justice. Sember moved for the suppression of evidence seized from his truck on the grounds that his truck exceeded the scope of the search warrant. The Government did not oppose, but claimed that the issue was moot because it had no intent to offer such evidence. The Court ruled in Sember's favor and suppressed the evidence. In a legal system that treats people fairly, the evidence seized from Sember's truck should not have been introduced into evidence at trial, unless

the Government had sought and obtained a reversal of the Court's prior order. The Government never did so. Sember therefore was treated unfairly and the administration of justice was prejudiced.

The Government's counsel downplays the significance of the ARINC NDA and argues that, if this case had resulted in a conviction, the admission of the ARINC NDA at trial would not have constituted plain error. (Doc. 150 at 16.) Yet, in the same memorandum, the Government's counsel also indicates that they considered the ARINC NDA and the BAH NDA to be "bookends" representing ARINC/BAHES employees' obligations with respect to government property. At trial, the Government repeatedly emphasized the importance of the NDAs that Sember signed and argued that the jury could infer from them that Sember knew that he had government property in his possession. The Government arguably even took the position that the issue of whether or not the government *owned* the property in Sember's possession could be inferred from the NDAs that he signed. Thankfully, the issue of whether introduction of the ARINC NDA constituted plain error is not before the Court. Nonetheless, the fact that the Court could have been in a position where it must decide whether to vacate a conviction underscores the seriousness of the Government counsel's misconduct.

It is with an eye toward preventing a recurrence of such conduct that the Court has determined what disciplinary action is appropriate in this case. Besides a formal reprimand, which this Order effectively constitutes, the Court must take action that will remind the Government's counsel of their obligation to ensure that evidence offered at trial is admissible under the Court's orders. The Court therefore orders that, for every item of non-testimonial evidence offered by the Government in a criminal trial before this Court, the Government's counsel in this case shall be required to submit a declaration identifying the source of the item of

evidence and attesting that the item of evidence has not been suppressed or otherwise excluded from evidence by the Court. This Order applies only to the two attorneys representing the United States in this case, and not to all attorneys in the United States Attorney's office. Mere compliance with this Order shall not render any item of evidence admissible; all evidence offered by Government's counsel will remain subject to objections under the Federal Rules of Evidence and other applicable law. This Order shall remain in effect until further order of the Court.

## CONCLUSION

For the reasons above, the Court finds that the Government's counsel violated the Court's Order on Sember's motion to suppress by introducing the ARINC NDA into evidence at trial. As a result, the Court **REPRIMANDS** the Government's counsel for violation of the Ohio Rules of Professional Conduct and **ORDERS** that, for every item of non-testimonial evidence offered by the Government in a criminal trial before this Court, the Government's counsel in this case shall be required to submit a declaration identifying the source of the item of evidence and attesting that the item of evidence has not been suppressed or otherwise excluded from evidence by the Court. This Order shall remain in effect until further order of the Court. The Court further **ORDERS** the Clerk to unseal the Court's Order to Show Cause (Doc. 146) and the memoranda submitted by the parties' counsel (Docs. 150, 152) regarding this matter.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, September 2, 2016.

                                                s/Thomas M. Rose
                                                _____
                                                THOMAS M. ROSE
                                                UNITED STATES DISTRICT JUDGE